IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | Criminal No. 3:12-CR-054-L |
| | § | |
| JACQUES ROY, M.D. (01) | § | |

**MEMORANDUM OPINION AND ORDER**

Before the court is Defendant's Motion To Revoke Magistrate's Detention Order and Request Bond, filed January 28, 2013, and Supplemental Motion to Revoke Magistrate's Detention Order and Request Bond, filed April 8, 2013. After careful consideration of the motions, the Government's response in opposition, the Government's memorandum in Support of Detention, the Defendant's reply, the detention hearing transcript, and applicable law, the court **denies** Defendant's Motion To Revoke [doc. 169], the Supplemental Motion to Revoke [doc. 189], and Defendant's request for a second detention hearing.

**I.   Background**

Defendant Jacques Roy, M.D. ("Dr. Roy") was arrested and made his initial appearance on February 28, 2012. The superseding indictment charges Dr. Roy with one count of conspiracy to commit healthcare fraud, ten counts of healthcare fraud, two counts of false statements for use in determining rights for benefit and payment under Medicare, and one count of obstruction of justice. It further alleges that Dr. Roy or other physicians at Dr. Roy's direction fraudulently billed Medicare and Medicaid for more than $375 million since 2006.

The magistrate judge, the Honorable Irma Carrillo Ramirez, held a hearing on the Government's Motion for Detention on March 5, 2012. After considering the evidence at the

**Memorandum Opinion and Order - Page 1**

hearing, the arguments of counsel, the pretrial services report, and the statutory factors set forth in 18 U.S.C. § 3142(g), Magistrate Judge Ramirez found that the Government had met its burden and established by a preponderance of the evidence that there was no condition or combination of conditions of release that would reasonably assure Dr. Roy's appearance at future court hearings.

Defendant argues that the documentary evidence found at his residence and presented by the Government is quite dated and not probative of his current flight risk. He also complains that the magistrate judge did not consider conditions that could be imposed to assure his appearance and that his continued incarceration has severely restricted his ability to assist counsel in reviewing discovery and meeting with his experts. He asks for a second detention hearing to present additional evidence rebutting the Government's documentary evidence, as well as testimony from character witnesses who are willing to pay his surety and act as third-party custodians if he is released.

The Government argues that the Defendant overlooks the strength of the Government's criminal case, the potential life sentence upon his conviction, and his significant ties to a foreign country. It asserts that the age of the documents found in Dr. Roy's residence was considered at the detention hearing and presents nothing new.

**II.    Applicable Law**

When a district court acts on a motion to revoke or amend a magistrate's pretrial detention order, the court acts *de novo* and must make an independent determination of the proper pretrial detention or conditions for release. *See United States v. Fortna*, 769 F.2d 243, 249 (5th Cir. 1985). The procedures for pretrial release and detention are governed by the Bail Reform Act of 1984. *See* 18 U.S.C. § 3141, *et seq*. Under the Act, "a defendant shall be released pending trial unless a judicial officer determines that release will not reasonably assure the appearance of the person as required

**Memorandum Opinion and Order - Page 2**

or will endanger the safety of any other person or the community." *United States v. Hare*, 873 F.2d 796, 798 (5th Cir. 1989). The facts of this case implicate the former concern--the assurance of the accused's appearance in court.

In ascertaining whether risk of flight warrants detention, a preponderance of the evidence standard is used, and "the judicial officer should determine, from the information before him, that it is more likely than not that no condition or combination of conditions will reasonably assure the accused's appearance." *Fortna*, 769 F.2d at 250. In making this determination, the court must consider the factors set out in 18 U.S.C. § 3142(g). They are: (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug; (2) the weight of the evidence against the person; and (3) the history and characteristics of the person, including (A) his character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, and (B) whether at the time of the current offense or arrest the defendant was on probation or parole. *See United States v. Stanford*, 630 F. Supp. 2d 751, 754 (S.D. Tex.), *aff'd*, 341 F. App'x 979 (2009) (citing *United States v. Rueben*, 974 F.2d 580, 586 (5th Cir. 1992).

### III. Discussion

#### *a. Detention*

Defendant first asserts that the magistrate judge failed to address which conditions of bond were contemplated and rejected before she concluded that no conditions would reasonably assure Dr. Roy's appearance. In this vein, Defendant argues that he would present evidence from character witnesses who could demonstrate that there are conditions, such as electronic monitoring, which

would adequately ensure his presence in court; however, "neither the Bail Reform Act nor case law requires a court to be absolutely certain that no possible non-detention option will prevent flight before determining that a defendant must remain in custody." *United States v. Stanford*, 341 F. App'x 979, 982 (5th Cir. 2009). As noted, the flight risk determination is made on the preponderance of the evidence standard after consideration of the relevant statutory factors. *See id*. The court turns next to those factors.

The nature and circumstances of the charged offenses include testimony from an investigator with the Texas Attorney General's Office that of the $19 million was paid by Medicare or Medicaid to Dr. Roy, only $4 million has been traced. The Government asserts, and Dr. Roy does not deny, that he faces a life sentence and the forfeiture of at least $18.5 million if found guilty. The alleged scheme involved the door-to-door recruitment of more than 11,000 individual patients with the assistance of over 500 home healthcare agencies–more than any other practice in the United States. The breadth of the alleged conspiracy and the severity of the potential sentence weigh in favor of detention. *See United States v. Fallah*, No. H-07-155, 2007 WL 2964780, *1 (S.D. Tex. Oct. 10, 2007).

With respect to the second factor, "the weight of the evidence against the person," courts have found this factor to be of least importance in the detention determination. *Stanford*, 630 F. Supp. 2d at 755 (citing *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986); *United States v. Barnett*, 986 F. Supp. 385, 393 (W.D. La. 1997)). The Government points out that the sheer size of the Medicare data makes it implausible that Dr. Roy could have legitimately certified and treated the number of patients for which Medicare was billed. The Government's memorandum in support of detention states that the allegations in the indictment are supported by witness statements that Dr.

**Memorandum Opinion and Order - Page 4**

Roy was intent on growing his company, Medistat, with referrals from home healthcare providers and that these patients were obtained through illegal recruiting involving kickbacks. The Government asserts that it has interviewed hundreds of former patients, and the overwhelming majority has stated they did not need the services for which Dr. Roy certified them, and he knew it. This showing, while modest, weighs in favor of detention.

Finally, the history and characteristics of Dr. Roy as a person weigh heavily in favor of detention. Witnesses for the defense testified that Dr. Roy is from Canada and has family there that he visits about twice a year. A defense witness also testified that Dr. Roy has traveled to the Grand Cayman Islands. Documents found in a search of his home in 2011 include: a fabricated Texas driver's license and a fabricated Quebec driver's license under the name Michael or Michel Poulin, both bearing Dr. Roy's photograph; a Canadian birth certificate for Poulin matching the dates of birth on the driver's licenses; documents related to a Canadian passport for Poulin; paperwork for the Canadian equivalent of a social security card in Poulin's name, which corresponds to the birth certificate; a forged letter of good-standing for Poulin on bank letterhead signed with the bank officer's name in Dr. Roy's handwriting; corresponding paperwork on the requirements for opening a bank account in the Cayman Islands; a bank book signed in Dr. Roy's handwriting for an account with the Royal Bank of Canada, Grand Cayman Islands, held by Poulin; a corresponding $2000 deposit to Eurobank; a bank statement addressed to Dr. Roy from the Guardian Bank & Trust Cayman Islands, Ltd. which shows a balance of about $80,000 for account holder Perth Corporation, known to be affiliated with Dr. Roy; a money request for Quebec, Inc, signed by Dr. Roy in Poulin's name regarding $44,863.33; and many more notes, business cards, bank letterhead, and receipts. The search of Dr. Roy's library and attic also revealed a book titled *Hide Your A$$et$ and Disappear:*

*A Step-by-Step Guide to Vanishing Without a Trace* and a pamphlet called "Asset Protection Made Easy."

That these written materials are dated between 1992 and 1999 and were found in Dr. Roy's attic do not weigh in favor of release, as he suggests. In this regard, Dr. Roy requests a second detention hearing so that he may present evidence that the documents are potentially relevant to an earlier time period when he was a trauma surgeon, interested in protecting his assets from malpractice lawsuits, and "not deeply involved in Medicare billing." This information, however, would not undermine Dr. Roy's creation of a false identity and hiding assets overseas in the past, which is strong evidence that flight is a viable option. Dr. Roy's assertions to the contrary notwithstanding, these dated documents also suggest that Dr. Roy has had years to plan and perfect his disappearance in the event he was ever arrested. This inference is supported by the Government's inability to track millions of dollars worth of healthcare payments made to Medistat. It is reasonable to conclude, therefore, that Dr. Roy has significant funds available to him should he be released.

Finally, with respect to Dr. Roy's character, there is testimony that he continued his allegedly fraudulent practices even after he was notified by Medicare and Medicaid that they were suspending payments to Medistat. After the search warrant was executed on his home and business, Dr. Roy promptly moved all of his patients and employees to another company, Medcare HouseCalls, which continued to see his patients, receive payments from Medicare or Medicaid, and then pay money back to Medistat in the form of maintenance fees. Between June and December of 2011 alone, Medistat received $1.2 million in "maintenance fees" from Medcare. This testimony causes the court to have serious concerns as to what Dr. Roy might do if he is released on bond.

**Memorandum Opinion and Order - Page 6**

The facts taken as a whole show it is more likely than not that no condition or combination of conditions will reasonably assure Dr. Roy's appearance. The breadth of the alleged conspiracy and possible life sentence, the evidence against him, his establishment of an alias with various corporations and overseas bank accounts, his connections to Canada, his pursuit of Medicare and Medicaid payments even after suspension, plus the fact that millions of dollars in assets likely remain available to him, all show by a preponderance of the evidence that he is a flight risk. *See Stanford*, 341 F. App'x at 983-984 (upholding detention order when defendant has "means, motive, and money" to flee).

### b. Ability to Assist Counsel

Defendant also contends that his detention has prevented him from adequately assisting his counsel. In particular, he states he is denied adequate computer access to review the massive discovery in this case, including 40 DVDs and CDs and voluminous electronically stored information.[*] Defendant states the problem has several causes, including limited time available for computer access, technological issues in the prison, and a shortage of computers overall. He concludes that he has sent three complaints by e-mail to the Warden, all of which went unanswered.

While Defendant asserts a constitutional right to counsel and to assist counsel in the review of discovery, he provides no authority, constitutional or otherwise, that these are reasons to justify the pretrial release of one who presents a flight risk. Case law reviewed by the court suggests otherwise. *See United States v. Winsor*, 785 F.2d 755, 756 (9th Cir. 1986) (holding that pretrial detention based on risk of flight does not violate the Eighth Amendment or the Due Process Clause

---

[*]The electronically stored information has been the subject of several funding motions and involves the analysis of 555 gigabytes of data (not 12.5 terabytes, as Defendant contends in his motion), which is to be hosted on an Internet website and shared by all codefendants.

**Memorandum Opinion and Order - Page 7**

of the Fifth Amendment); *United States v. McConnell*, 842 F.2d 105, 110 (5th Cir. 1988) (relying on *Winsor* to hold that pretrial detention based on risk of flight does not violate the Eighth Amendment); *see also Lehn v. Hartwig*, 13 F. App'x 389, 392 (7th Cir. 2001) (holding in § 1983 action, "If prisoners have no constitutional right to a typewriter, they certainly do not have one to a computer"); *Robinson v. Joya*, Civ. No. 08-1339, 2010 WL 1779885, at *3 (E.D. Cal. Apr. 28, 2010) (holding in § 1983 claim, "No court has found that prisoners have a constitutional right to possess personal computers, or items that are similar to personal computers, in their cells."). To the extent that Dr. Roy asserts his inadequate access to discovery as a reason for pretrial release, his motions are denied without prejudice to his filing of a more appropriate request for relief. *E.g., United States v. Neff*, No. 3:11-CR-0152-L, 2013 WL 30650, *6 (N.D. Tex. Jan. 3, 2013) (extending inmate's pretrial access to law library and e-discovery capable computer).

### c. Hearing Request

Finally, Defendant requests a hearing at which he may present evidence from unidentified witnesses who (1) are willing to place a reasonable surety with the clerk, (2) are willing to act as third-party custodians and report any violations of the bond conditions imposed, (3) have known Dr. Roy for a lengthy period of time, (4) are aware of the allegations against him, (5) believe he is not a flight risk, and (6) would say that Dr. Roy has never discussed with them, nor are they aware of, any activity regarding the exportation of funds to foreign banks or nations. With this evidence, he would show the court that there are conditions of bond sufficient to ensure his appearance. Defendant also requests an opportunity to present evidence of a "plausible explanation" for the documents found in his residence, namely, that they were prepared fifteen years earlier to protect his assets from malpractice lawsuits. With evidence linking these documents to activity outside the Medicare-related

**Memorandum Opinion and Order - Page 8**

allegations, he argues, the Government's theory that he is a flight risk because he is siphoning funds overseas would fail.

An independent *de novo* review by the court under section 3145(b) does not require a *de novo* hearing, and this court's review may be based on the evidence presented to the magistrate at the detention hearing. *United States v. Howard*, 2006 WL 3300462, at *3 (N.D. Tex. Oct 19, 2006) (citing *United States v. Baker*, 703 F. Supp. 34, 36 (N.D. Tex. 1989)). Accordingly, the court is not required to afford Defendant another detention hearing.

Moreover, as for his character evidence and evidence regarding possible sufficient conditions of bond, the court has already noted that it is not required to be absolutely certain that no possible non-detention option will prevent flight before determining that a defendant must remain in custody. *Stanford*, 341 F. App'x at 982. Furthermore, the information in (3) through (6) above was substantially presented at the detention hearing, either through direct or cross-examination of the defense witnesses, and a hearing to adduce further facts on the matter would not change the balance of evidence in the record.

As for the circumstances surrounding Dr. Roy's possession of the documents in his library and attic, whatever his initial reason for having them, it does not diminish the conclusion that he made, and may still have, a plan for hiding assets overseas under an alias. That these assets may not be from the Medicare or Medicaid payments is not the point; the point is that, more likely than not, there would be funds available to him if he chose to flee. The court concludes, therefore, that further evidence on the matter would not change the balance of evidence in the record, and a second hearing is unnecessary.

**Memorandum Opinion and Order - Page 9**

## IV.     Conclusion

The court **denies** the Motion To Revoke Magistrate's Detention Order and Request Bond [doc. 169], the Supplemental Motion to Revoke Magistrate's Detention Order and Request Bond [doc. 189], and Defendant's request for a second detention hearing. The detention order issued by Magistrate Judge Irma Carrillo Ramirez **remains in place** during the pendency of this case.

**It is so ordered** this 28th day of August, 2014.

_____
Sam A. Lindsay
United States District Judge