IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | CRIMINAL NO.  3:12-CR-54-L |
| JACQUES ROY, ET AL. | |

GOVERNMENT MOTIONS IN LIMINE

The United States of America, by and through its counsel, respectfully requests that before the beginning of evidence in the above-entitled cause this Court direct the defendants, counsel for the defendants, and all witnesses for the defendants not to mention, refer to, interrogate concerning, or bring to the attention of the jury in any manner, directly or indirectly, any of the below listed matters without first approaching the bench and obtaining a ruling on their admissibility. The specific matters are as follows:

*Motion in Limine No. 1 – Potential Sentence and Conviction Ramifications*

The government moves to preclude any direct or indirect references to the sentence that might be imposed should the defendants be convicted of the offenses charged, the conditions the defendants might face in prison if they are convicted and sentenced to a term of imprisonment, and the impact that any sentence may have on the family of a defendant.

Such references are expressly inadmissible and irrelevant, and would be unfairly prejudicial.  It is well established that a jury may not, in reaching its verdict, consider any possible sentence that might be imposed following conviction.  *See Shannon v. United*

*States*, 512 U.S. 573, 579 (1994) (citing *Rogers v. United States*, 422 U.S. 35, 40 (1975)). This principle "is a reflection of the basic division of labor in our legal system between judge and jury. The jury's function is to find the facts and to decide whether, on those facts, the defendant is guilty of the crime charged. The judge, by contrast, imposes sentence on the defendant after the jury has arrived at a guilty verdict." *Id*. at 579; *see also Rogers*, 422 U.S. at 40 (unless specifically authorized by statute, juries have no sentencing function and must reach their verdicts "without regard to what sentence might be imposed"); *see generally Fifth Circuit Pattern Jury Instructions* § 1.20 (Caution – Punishment).

In *United States v. Cook*, 776 F. Supp. 755, 757 (S.D.N.Y. 1991), the district court granted the government's motion in limine requesting the defense counsel be prohibited from cross-examining witnesses in a "manner calculated to alert the jury to the penalties defendants face on trial." *Id*. at 756. The rationale for the court's ruling was sound:

> The function of the jury in a criminal trial is to determine guilt or innocence based upon an impartial consideration of the evidence, unswayed by emotion, fear or prejudice. Where the jury is permitted to speculate concerning a defendant's possible punishment, a jury cannot properly perform that function.

*Id*. at 757 (citations omitted); *see United States v. Walton*, 552 F.2d 1354, 1364 (10th Cir. 1977) (exclusion of cross-examination concerning the witness's knowledge of the maximum penalty for the crime charged upheld).

Moreover, without the requested limitation, this Court would be called upon to conduct a discussion with the jury on sentencing, which would, in effect, remove the

issue of sentencing from the exclusive province of the Court and distort the jury's deliberations. *See United States v. Frappier*, 807 F.2d 257, 261-62 (1st Cir. 1986). Consequently, the government asks the Court exclude evidence and argument regarding the potential sentences or consequences the defendants are facing.

*Motion in Limine No. 2 – Delay in Bringing Case to Trial*

The government moves to preclude any direct or indirect references to the length of time that has passed since the acts alleged in the indictment and the date that the trial begins.

Any alleged delay does not relate to the elements of the offenses that the defendants are charged with violating, and therefore, that delay is of no consequence to the defendants' upcoming trial. The timing of the indictment has no bearing whatsoever on the elements of the alleged offenses. Alleged delay in that timing is, in fact, wholly irrelevant to the defendant's misconduct. As such, testimony or evidence regarding pre-indictment delay would have no "tendency to make the existence of any fact of consequence" to the defendants' conduct "more or less probable than it would be without the evidence." Fed. R. Evid. 401.

Because it would not be relevant, any reference to any alleged intentional delay or an advantage to the United States created by the timing of the indictment in this case should be excluded from trial under Rule 402. In addition, because the trial has been delayed for several years following the indictment, any reference to the delay would be potentially confusing to the jury.

As for the delay between the date on which the case was indicted and when the trial began, this case has been continued multiple times, typically at the request of the defendants.[1]  (*See* Dkt. No. 181 (agreed to by all parties); Dkt. No. 238 (agreed to by all parties); Dkt. No. 324 (agreed to by all defendants but opposed by the government); Dkt. No. 404 (agreed to by all defendants but opposed by the government); Dkt. No. 510 (agreed to by all defendants but opposed by the government).  The length of delay would only be relevant to the issue of constitutional or statutory speedy trial, which would be matters of law for the Court, and would not be a proper issue for the jury to consider since those issues are not relevant to the elements of the crimes charged in the indictment.

As such, the defense should be precluded from directly discussing or referencing this delay as an issue during the trial.

*Motion in Limine No. 3 – Use of Interview Summaries*

The government moves the Court to find that interview summaries prepared by agents with the Federal Bureau of Investigation (FBI) and the Department of Health and Human Services (HHS), and the Texas Attorney General's Office ("interview summaries"), are not statements of the person interviewed under the Jencks Act and to preclude the defense from introducing the context of the interview summaries to impeach witnesses during cross-examination, publishing the contents of the interview summaries to the jury, or otherwise suggesting to the jury that the interview summaries are statements of the witness who did not write them or adopt them.

---

[1]   The government did move, on one occasion, for a continuance, when it sought to have the case declared complex shortly after indictment.  (*See* Dkt. No. 55.)

**Government Motions in Limine – Page 4 of 16**

In order to provide for full and fair cross-examination, the Jencks Act requires that, after a witness for the United States testifies on direct examination, the government must provide the defense with any statements made by the witness that relate to the subject of his or her testimony.  18 U.S.C. § 3500.  A statement within the meaning of the Jencks Act is defined as "a written statement made by said witness and signed or otherwise adopted and approved by him;" a recording or transcription that "is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously;" or a statement made by a witness to the grand jury. 18 U.S.C. § 3500(e).

In *Palermo v. United States*, the Supreme Court held that because the Jencks Act is meant to restrict the defendant's use of discoverable statements to impeachment, "only those statements which could properly be called the witness' own words should be made available to the defense."   360 U.S. 343, 349, 352 (1959).  The Court went on to elaborate that "summaries of an oral statement which evidence substantial selection of material" or "statements which contain [an] agent's interpretations or impressions" are "not to be produced." *Id*. at 352-53.

Consistent with *Palermo*, interview summaries are not discoverable under the Jencks Act because they are not statements of the witness within the meaning of the statute.[2]  Unless the witnesses have reviewed and adopted the interview summaries – which was not the practice in this case – the interview summaries are not statements of

---

[2]   Of course, interview summaries would be discoverable under the Jencks Act as a statement of the agent, if the agent who prepared it is called as a witness to testify regarding the subject matter contained in the report.

**Government Motions in Limine – Page 5 of 16**

the witness under subsection (e)(1) of the Jencks Act.  Moreover, because the interview summaries are written after interviews are completed and reflect the thought process and interpretations of the agent, they do not constitute a contemporary and substantially verbatim recital of the witness's statement under subsection (e)(2).

Every circuit court to address the question has held that interview summaries generally are not discoverable under the Jencks Act.  *See United States v. Williams*, 998 F.2d 258, 269 (5th Cir. 1993) ("We hold that the FBI Forms 302 were not discoverable statements under the Jencks Act"); *United States v. Price*, 542 F.3d 617, 621 (8th Cir. 2008) (holding that absent evidence that the witnesses "approved or adopted" the FBI 302s, "these documents are not discoverable under...the Jencks Act"); *United States v. Jordan*, 316 F.3d 1215, 1255 (11th Cir. 2003) (holding that FBI 302s "are not Jencks Act statements of the witness unless they are substantially verbatim and were contemporaneously recorded, or were signed or otherwise ratified by the witness"); *United States v. Donato*, 99 F.3d 426, 433 (D.C. Cir. 1996) ("[T]he agent's notes and 302 report...are not covered by the Jencks Act"); *United States v. Roseboro*, 87 F.3d 642, 646 (4th Cir. 1996) ("[T]he district court's finding that the FBI 302 Report was not a Jencks Act statement is not clearly erroneous"); *United States v. Farley*, 2 F.3d 645, 654-55 (6th Cir. 1993) (holding that because there was "no proof that the statement was adopted or approved...it was not clearly erroneous...to deny defendants access to the FBI 302");; *United States v. Morris*, 957 F.2d 1391, 1402 (7th Cir. 1992) ("[T]he documents are not statements producible under the Jencks Act because they were neither signed nor adopted...and further because they were not a verbatim recital...but rather only an agent's

summary"); *United States v. Foley*, 871 F.2d 235, 239 (1st Cir. 1989) ("It is plain that the 302s are not substantially verbatim recitals...and recorded contemporaneously."); *United States v. Claiborne*, 765 F.2d 784, 801 (9th Cir. 1985) (because "the summaries represent...the agents' selection of certain information...the district court properly characterized the summaries as non-Jencks Act material").

Although production of the interview summaries was not required, in this case, the government has provided broad discovery, including over 600 interview summaries for the government's witnesses at trial. However, the defense should be limited to using those interview summaries consistent with the law and rules of evidence. In particular, the defense should be precluded from introducing the contents of the interview summaries to impeach witnesses on the basis of inconsistent statements because the interview summaries are not the statements of the witnesses themselves. Moreover, the defense should be precluded from publishing the contents of the interview summaries to the jury or otherwise suggesting to the jury that the interview summary is a statement of the witness. To allow otherwise would subvert the meaning of the Jencks Act and the Supreme Court's holding in *Palermo* that it would "be grossly unfair to allow the defense to use statements to impeach a witness which could not fairly be said to be the witness' own rather than the product of the investigator's selections, interpretations, and interpolations." 360 U.S. at 350.

The defense is, of course, free to ask a witness whether he or she made a statement that is reflected in an interview summary.[3] However, if the defense is not satisfied with the witness's answer, the defense may not publish or introduce the contents of the interview summary as a prior inconsistent statement. *See United States v. Brika*, 416 F.3d 514, 529 (6th Cir. 2005) (holding that "such documents [FBI 302s] have been deemed inadmissible for impeaching witnesses on cross examination"); *United States v. Leonardi*, 623 F.2d 746, 757 (2nd Cir. 1980) (holding that because "the written statement of the FBI agent was not attributable to [the witness]" it was "properly rejected as a prior inconsistent statement"); *United States v. Hill*, 526 F.2d 1019, 1026 (10th Cir. 1975) (upholding the trial court's decision to "not allow counsel to use the 302 statement to impeach a witness because the witness did not prepare or sign the document and probably never adopted it").

Moreover, the defense may not use the interview summary in a way that suggests to the jury that the interview summary is a statement of the witness. *See United States v. Marks*, 816 F.2d 1207, 1210-11 (7th Cir. 1987) (holding that where defense counsel read from a 302 during cross-examination in a way that would "seem authoritative" and potentially confuse the jury, the judge was entitled to require the witness be shown the 302 and given the opportunity to adopt or reject it as a statement, although such a practice was no longer required by the federal rules of evidence).

---

[3] Likewise, in the appropriate circumstances and with the proper foundation, the defense may attempt to refresh the witness's recollection by showing the witness the interview summary, but only if the defense does so in a manner that does not imply that the interview summary is the witness's own statement.

**Government Motions in Limine – Page 8 of 16**

The government has been committed to providing broad and early discovery in this matter and has provided interview summaries for its witnesses at trial although such production was not required under the Jencks Act. In turn, the defense must use those interview summaries in accordance with the law and rules of evidence, and they should not be permitted to introduce the interview summaries, publish them to the jury, or otherwise suggest to the jury that the interview summaries are statements of the witnesses.

*Motion in Limine No. 4 – Other "Good Acts" of Defendants*

The government moves, pursuant to Fed. R. Evid. 402, 403, 404, and 405, for an order prohibiting the defendants from introducing evidence pertaining to "other good acts" or the absence of criminal activity. Just as a bank robber cannot introduce evidence of all the times she went into a bank and did not rob it, the defendants may not present evidence of medical treatment they provided or billing they performed or submitted where they did not break the law.

Evidence of legitimate conduct is irrelevant and, thus, inadmissible under Fed. R. Evid. 402. Even if such evidence were somehow relevant to the defendant's character, the evidence is barred by Fed. R. Evid. 405(a), which prohibits the use of specific acts to prove character, and Fed. R. Evid. 404(b), which prohibits the use of specific acts to show character for propensity purposes. Furthermore, any marginal relevance that any "good act" evidence has to prove any of the defendant's motive or intent would be substantially outweighed by its tendency to waste time and to confuse the jury.

Courts have routinely granted motions similar to the instant request. *See, e.g., United States v. Grimm*, 568, F.2d 1136, 1138 (5th Cir. 1978) ("evidence of noncriminal conduct to negate the inference of criminal conduct is generally irrelevant); *United States v. Marrero*, 904 F.2d 251, 260 (5th Cir. 1990) (in a false claims case, "[t]he fact that [the defendant did not overcharge in every instance in which she had an opportunity to do so is not relevant to whether she, in fact, overcharged as alleged in the indictment" and the court also excluded as irrelevant a survey of all the defendant's patients, which purportedly showed that seventy-seven out of the ninety-nine responding patients attested that her office's bills were accurate); *United States v. Nekritin*, No. 10-CR-491, 2011 WL 2462744, at *5 (E.D.N.Y. June 17, 2011 (granting government motion in limine to exclude as irrelevant evidence that defendant legitimately billed for some Medicare- and Medicaid-covered procedures in uncharged cases, where the indictment charged fraudulent billing practices); *United States v. Ellisor*, 522 F.3d 1255, 1270 (11th Cir. 2008) (affirming district court's ruling precluding the defendant from offering evidence of his legitimate business activities in order to negate evidence of his fraudulent intent as to the charged conduct); *United States v. Winograd*, 656 F.2d 279, 284 (7th Cir. 1981) (finding defendant's performance of some legal trades irrelevant to his knowledge of illegal trades); *United States v. Scarpa*, 897 F.2d 63 (2nd Cir. 1990) (A defendant may not seek to establish his innocence . . . through proof of the absence of criminal acts on specific occasions"); *United States v. Williams*, 205 F.2d 23, 34 (2nd Cir. 2000) (excluding evidence of defendant's innocent trips to Jamaica to rebut charges of importing cocaine from Jamaica); *United States v. Neighbors*, 23 F.3d 306 (10th Cir.

1994) (affirming trial court's decision to exclude evidence in drug case of defendant's advocacy against substance abuse and membership on board of substance abuse center); *United States v. Heidecke*, 900 F.2d 1155, 1162 (7th Cir. 1990) (proof that a defendant acted lawfully on other occasions is not necessarily proof that he acted lawfully on the occasion alleged in the indictment).

Thus, the defendants should be precluded from offering evidence that, on certain occasions, any one of the defendants provided proper medical care to individuals not at issue in the indictment or that they properly billed Medicare for legitimate services on occasions other than those at issue in the indictment.

*Motion in Limine No. 5 – Blaming the Victim(s)*

The government moves to preclude the defendants from offering any variety of a "blame the victim" defense, including arguing that Medicare and/or Medicaid should not have paid their claims or that the payment of their claims led them to believe that their bills were justified. It is well-settled that any potential negligence of the victim in failing to discover a fraudulent scheme is not a defense to a defendant's criminal conduct. *See United States v. Kreimer*, 609 F.2d 126, 132 (5th Cir 1980) (a victim's negligence is not a defense to criminal conduct); *United States v. Coyle*, 63 F.3d 1239, 1244 (3rd Cir. 1995) (in a case involving healthcare fraud, the Court held that the negligence of the victim in failing to discover a fraudulent scheme is not a defense to criminal conduct); *United States v. Colton*, 231 F.3d 890 (4th Cir. 2000) ("If a scheme to defraud has been or is intended to be devised, it makes no difference whether the persons the schemers intended to defraud are gullible or skeptical, dull or bright. These are criminal statutes, not tort

Government Motions in Limine – Page 11 of 16

concepts." (*quoting United States v. Brien*, 617 F.2d 299, 311 (1st Cir. 1980)); *United States v. Svete*, 556 F.3d 1157, 1165 (11th Cir. 2009) ("A perpetrator of fraud is no less guilty of fraud because his victim is also guilty of negligence.")

Courts, realizing that inquiries into a victim's negligence are irrelevant and potentially prejudicial, have taken measures to preclude such evidence and arguments. See *United States v. Davis*, 226 F.3d 346, 358-59 (5th Cir. 2000) (affirming jury instruction that "the naivety, carelessness, negligence, or stupidity of a victim does not excuse criminal conduct, if any, on the part of a defendant"); *United States v. Thomas*, 377 F.3d 232, 243-244 (2nd Cir. 2004) (affirming restrictions on cross-examination of victim; rejecting defendant's argument that victim's foolishness vitiated defendant's fraudulent intent); *United States v. Allen*, 201 F.3d 163, 167 (2nd Cir. 2000) (noting that "[t]he victim's negligence in permitting a crime to take place does not excuse the defendant from culpability for her substantive offenses").

The same is true here, and the defendants should not be permitted to inquire of any witness about what steps, if any, Medicare and Medicaid made to investigate the defendants' claims prior to paying them. Nor should the defendants be permitted to argue or suggest during cross examinations that Medicare or Medicaid should have dealt with the defendants' fraud by simply denying the claims at issue. By the same token, the defendants should not be permitted to argue that by paying prior claims of a similar nature, Medicare and Medicaid led the defendants to believe that their billings were acceptable.

*Motion in Limine No. 6 – Uncharged Individuals or Entities*

The government moves to preclude the defendants from offering any arguments or evidence that others who engaged in the same or similar conduct as the defendants were not charged by the Government, except when the uncharged individual is a co-conspirator witness called to testify by the Government and the forbearance by the Government in charging said witness was a benefit bestowed on the witness for such testimony (i.e. *Giglio*). In particular, the defendants should be precluded from offering or eliciting evidence regarding other doctors or other home health agencies that engaged in the same type of fraud as the defendants but who were not charged.

"The decision to prosecute one person and not another is a proper exercise of executive discretion with which [courts] are reticent to interfere." *United States v. Webster*, 162 F.3d 308, 333 (5th Cir. 1998), citing *United States v. Hoover*, 727 F.2d 387, 389 (5th Cir.1984). *See also United States v. Jeong*, 624 F.3d 706, 713 (5th Cir. 2010) ("the decision to prosecute is particularly ill-suited to judicial review," and that for this reason, the United States government "retains broad discretion as to whom to prosecute." *citing Wayte v. United States*, 470 U.S. 598, 607 (1985)). By arguing that others were not prosecuted, the defendants would be effectively arguing selective prosecution. In *United States v. Johnson*, 577 F.2d 1304, 1308 (5th. Cir. 1978), the Fifth Circuit Court stated:

> To support a defense of selective or disc(r)iminatory prosecution, a defendant bears the heavy burden of establishing, at least prima facie, (1) that, while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, and (2) that the government's discriminatory selection of him for prosecution has been invidious or in bad faith, i.e.,

> based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights. These two essential elements are sometimes referred to as "intentional and purposeful discrimination."

The defense has made no claim of purposeful and intentional discrimination here, thus there would be no basis for arguing to the jury that others were not but should have been prosecuted. The Government asserts that attempts to obtain this type of testimony from witnesses should be excluded until such time that the defendants raise and support such a claim of selective prosecution and then only upon further direction of this Court. The Government therefore requests the Court, prior to admitting evidence, if any, in the trial of the case at bar, that other individuals similarly involved in the criminal activity for which the Defendants are charged, require the proponent of such evidence to address the Court, outside the hearing of the jury, to determine whether such evidence is legally admissible, relevant and material.

## CONCLUSION

The government requests that the Court grant the preceding six motions and that the Court's instructions with regard to these issues apply to all aspects of the trials, including voir dire, opening statements, questioning of witnesses, and closing statements.

## CERTIFICATE OF CONFERENCE

Government Counsel attempted to confer with counsel for each of the four defendants. Government counsel emailed the proposed motions to defense counsel on the morning of Friday, November 6, 2015, and asked that they respond with the position of each defendant by close of business on Tuesday, November 10, 2015. Government

counsel did not receive a response as to any position taken by any of the defendants as to the proposed motions.

        Respectfully submitted,

        JOHN R. PARKER
        UNITED STATES ATTORNEY

        */s/ P.J. Meitl*
        P.J. MEITL
        Assistant United States Attorney
        D.C. Bar No. 502391
        Virginia Bar No. 73215
        1100 Commerce Street, Third Floor
        Dallas, Texas 75242-1699
        Telephone: 214.659.8680
        Facsimile: 214.659.8809
        Email: philip.meitl@usdoj.gov

        */s/ Nicole Dana*
        NICOLE DANA
        Special Assistant United States Attorney
        Texas State Bar No. 24062268
        1100 Commerce Street, Third Floor
        Dallas, Texas 75242-1699
        Telephone: 214.659.8694
        Facsimile: 214.659.8805
        Email: nicole.dana@usdoj.gov

        */s/ Chad E. Meacham*
        CHAD E. MEACHAM
        Criminal Chief
        Texas State Bar No. 00784584
        1100 Commerce Street, Third Floor
        Dallas, Texas 75242-1699
        Telephone: 214.659.8716
        Facsimile: 214.767.4100
        Email: chad.meacham@usdoj.gov

## CERTIFICATE OF SERVICE

On November 11, 2015, I electronically submitted the following document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.  I hereby certify that I have served all counsel and/or pro se parties of record electronically or by another manner authorized by Federal Rule of Criminal Procedure 49(b).

s/ *P.J. Meitl*
P.J. Meitl
Assistant United States Attorney
